Leonard R. Berman
4711 SW Huber St., Suite E-3
Portland, OR 97219
(503) 473-8787
OSB # 96040
Easyrabbi@yahoo.com

ATTORNEY FOR PLAINTIFFS

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| JEFORY MASHBURN, On Behalf of Minor CM, JOSEPH CORNELISON, On Behalf of Minor, RC, NATHANAEL WILLIAMS, AMY HINMON, JOSEPH LEWIS, All individually and on behalf of a class of others similarly situated, | : : : : : : : : : | Case No. 08-718HU |
| Plaintiffs, | : : : | **AMEDED CLASS ACTION COMPLAINT** **JURY TRIAL DEMANDED** |
| v. | : : : : | |
| YAMHILL COUNTY, TIM LOEWEN, both individually and in his official capacity as Director, CHUCK VESPER, both individually and in his official capacity as Division Manager, | : : : : : : : : : | |
| Defendants. | : : | |

/
/

1   AMENDED COMPLAINT

/

## INTRODUCTION

This is a class action brought to redress the deprivation by Defendants of rights secured to the Plaintiffs and proposed Class by the United States Constitution and the laws of the United States of America. For at least the past several years, the Yamhill County Juvenile Detention Center has had a policy of strip-searching all individuals who enter the Yamhill County Juvenile Detention Center (hereinafter "YCJDC") and are placed in jail-type clothing, regardless of the crime upon which they are charged. Upon information and belief, this policy is, in part, derived from the written procedures of the aforementioned County Departments, and was promulgated by senior Department officials, named individually above.

It has been well established in this judicial circuit for many years that individuals charged with misdemeanors, violations or non-violent, non-drug or weapon offenses cannot be strip-searched absent particularized suspicion that they possess weapons or contraband. In fact, several judges in this Judicial District, as well as the United States Court of Appeals for the Ninth Circuit, have recently held that blanket strip search policies/practices like those in dispute in this case are unconstitutional. In short, the policy of Yamhill County and the County's Juvenile Department of forcing those charged with minor crimes and non-violent, non-weapon or drug-related offenses to undergo the indignities of a strip search upon entry into the YCJDC is not only clearly illegal, but is degrading, insensitive and unnecessary.

Current minors, through their parents or guardians, CM, RC, and former minors Lewis, Nathanael Williams and Amy Hinmon bring this action on behalf of themselves, and on behalf of a class of hundreds if not thousands of other minors or former minors who were strip-searched after being charged with petty crimes, and/or non-drug, non-weapon offenses to vindicate the clear and unnecessary violation of their civil rights and those of the class members they propose to represent. For example, minors CM and RC were taken in on allegations of Sex Abuse 1. They were transported to the YCJDC and were at later dates subjected to multiple strip searches, in violation of their rights against unreasonable searches under the Fourth Amendment of the United States Constitution. They seek monetary damages for themselves and each member of the proposed class, a declaration that the YCJDC Department's policies/practices are unconstitutional, and an injunction precluding Yamhill County from continuing to violate the rights of those placed into their juvenile custody. With this as a background, Plaintiffs CM, RC, Lewis, Williams, and Hinmon through counsel, hereby complain as follows:

## JURISDICTION

1. This Court has jurisdiction over this action under the provisions of 28 U.S.C. §§ 1331, 1341 & 1343 because it is filed to obtain compensatory damages, punitive damages, and injunctive relief for the deprivation, under color of state law, of the rights of citizens of the United States secured by the Constitution and federal law pursuant to 42 U.S.C. §§ 1981 & 1983. This Court also has jurisdiction over this action under the provisions of 28 U.S.C. § 2201, as it is filed to obtain declaratory relief relative to the Constitutionality of the policies of a local government.

2. Venue is proper under 28 U.S.C. § 1391(e)(2) because the events giving rise to Plaintiffs' claims and those of proposed class members occurred in this judicial district..

## PARTIES

3. Plaintiffs CM, RC, Lewis, Williams, and Hinmon et al ("CM et al") reside in Yamhill County, Oregon.

4. Defendant Yamhill County (the "County") is a county government organized and existing under the laws of the State of Oregon. At all times relevant hereto, the County, acting through its Juvenile Department, was responsible for the policies, practices, supervision, implementation and conduct of all matters pertaining to the YCJDC and was responsible for the appointment, training, supervision and conduct of all Department personnel, including those working in the YCJDC. In addition, at all relevant times, the County was responsible for enforcing the rules of the YCJDC, and for ensuring that Juvenile Department personnel employed in the YCJDC obey the Constitution and laws of the United States and of the State of Oregon.

Defendant Tim Loewen is the director of the Yamhill County Juvenile Deopartent and Defendant Chuck Vesper is the Division Manager overseeing the YCJDC, and, as such, are jointly policy makers with respect to the treatment of pre-trial and other detainees over which the YCJDC exercises custodial or other control. They are made Defendants in this action in both their individual and official capacities. Collectively, Mr. Vesper and Mr. Loewen will be referred to as the "Policy Making Defendants."

## CLASS ACTION ALLEGATIONS

5.   Plaintiffs bring this action pursuant to Rules 23(b)(1), 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of themselves and a class of similarly situated individuals who were charged with misdemeanors or minor crimes and were strip searched upon their entry into the YCJDC.

6.   The classes that Plaintiffs seek to represent are defined as follows:

> All persons who have been or will be placed into the custody of the Yamhill County Juvenile Detention Center (YCJDC) after being charged with misdemeanors, violations, civil commitments, non-drug, non-weapon offenses or other minor crimes and were or will be strip searched upon their entry into, and including but not limited to strip searches after contact visits with attorneys and other counselors and professionals in the YCJDC, pursuant to the policy, custom and practice of the Yamhill County Juvenile Detention Department. The class period commences on June 12, 2006 and extends to the date on which Yamhill County is enjoined from, or otherwise cease, enforcing their unconstitutional policy, practice and custom of conducting strip searches absent reasonable suspicion. Specifically excluded from the class are Defendants and any and all of their respective affiliates, legal representatives, heirs, successors, employees or assignees.

7.   This action has been brought and may properly be maintained as a class action under Federal law and satisfies the numerosity, commonality, typicality and adequacy requirements for maintaining a class action under Fed. R. Civ. P. 23(a).

8.   The members of the class are so numerous as to render joinder impracticable. Upon information and belief, there are hundreds of people arrested for misdemeanors, violations and non-drug, non-weapon offenses who are placed into the custody of the YCJDC every month – all of whom are members of the proposed class.   Upon

information and belief, the size of the proposed class totals at least 1,000 individuals, some of whom have had their civil rights violated on multiple occasions.

9. Upon information and belief, joinder of all of these individuals is impracticable because of the large number of class members and the fact that class members are likely dispersed over a large geographical area, with some members presently residing outside of the County and this Judicial District. Furthermore, upon information and belief, many members of the class are low-income persons, may not speak English, and likely would have great difficulty in pursuing their rights individually.

10. Common questions of law and fact exist as to all members of the Class, in that they all had their right to be free from unreasonable searches violated by Defendants' conducting strip searches absent particularized suspicion. All members of the class were charged with misdemeanors or violations or non-drug, non-weapon felonies when placed into the custody of their YCJDC, and all were illegally strip searched in violation of the clearly established law in this judicial circuit.

11. Plaintiffs' claims are typical of the claims of the members of the Class. Plaintiffs and all members of the class sustained damages arising out of Defendants' course of conduct. The harms suffered by the Plaintiff are typical of the harms suffered by the class members.

12. The representative Plaintiffs have the requisite personal interest in the outcome of this action and will fairly and adequately protect the interests of the Class. Plaintiffs have no interests that are adverse to the interests of the members of the Class.

13. Plaintiffs have retained counsel who has substantial experience and success in the prosecution of civil rights litigation.

14. Counsel for Plaintiffs know of no conflicts among members of the class, or between counsel and members of the class.

15. This action, in part, seeks declaratory and injunctive relief.  As such, the Plaintiffs seek class certification under Fed. R. Civ. P. 23(b)(2), in that all class members were subject to the same policy requiring the illegal strip searches of individuals charged with misdemeanor or minor crimes, non-drug, non-weapon felonies and placed into the custody of the YCJDC.  In short, the aforementioned County Departments, the Policy Making Defendants and County Corrections Officers acted on grounds generally applicable to all class members.

16. In addition to certification under Rule 23(b)(2), and in the alternative, Plaintiffs seek certification under Rule 23(b)(3).

17. Common questions of law and fact exist as to all members of the Class, and predominate over any questions that affect only individual members of the Class.  These common questions of law and fact include, without limitation, the common and predominate question of whether the Defendants' written and/or *de facto* policy/practice of strip searching all individuals charged with misdemeanors or minor crimes or non-drug, non-weapon felonies and committed to the YCJDC is a violation of the Fourth and Fourteenth Amendments to the United States Constitution, and whether such a written and/or *de facto* policy existed during the class period.

18. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, since joinder of all of the individual members of the class is impracticable given the large number of class members and the fact that they are dispersed over a large geographical area.  Furthermore, the expense and burden of

individual litigation would make it difficult or impossible for individual members of the class to redress the wrongs done to them. The cost to the federal court system of adjudicating thousands of individual cases would be enormous. Individualized litigation would also magnify the delay and expense to all parties and the court system. By contrast, the conduct of this action as a class action in this District presents far fewer management difficulties, conserves the resources of the parties and the court system, and protects the rights of each member of the Class.

19. Upon information and belief, there are no other actions pending to address the Defendants' flagrant violation of the civil rights of thousands of individuals, even though the Defendants have maintained their illegal strip search regimen for the past several years.

20. In the alternative to certification under Fed. R. Civ. P. 23(b)(3), Plaintiffs also seek partial certification under Fed. R. Civ. P. 23(c)(4).

# FACTS

## Facts Applicable to the Class Generally

21. The Fourth Amendment of the United States Constitution prohibits state officials, such as the Policy Making Defendants in this action and the Corrections Officers they supervise, from performing strip searches of arrestees who have been charged with misdemeanors or other minor crimes unless the officer has reasonable suspicion to believe that the arrestee is concealing a weapon or contraband.

22. Upon information and belief, the YCJDC and the Policy Making Defendants have instituted a written and/or *de facto* policy, custom or practice of strip searching all individuals who enter the custody of their YCJDC (by forcing them to remove their clothing for a visual inspection of their bodies and/or forcing them to submit to a visual inspection of their body cavities) and are placed into jail clothing, regardless of the nature of their charged crime and without the presence of reasonable suspicion to believe that the individual was concealing a weapon or contraband. Strip searches are also routinely conducted after attorney and /or professional contact visist. For purposes of this Complaint, strip and visual cavity searches are collectively referred to as "strip searches."

23. The aforementioned YCJDC, and the Policy Making Defendants know that they may not institute, enforce or permit enforcement of a policy or practice of conducting strip searches without particularized, reasonable suspicion.  This judicial circuit has stated repeatedly that state officials may not strip search individuals charged with misdemeanors or violations absent particularized, reasonable suspicion, with this principle being clearly established in *Kennedy v. Los Angeles P.D.*, 901 F2d 702, 711, (9th Cir. 1990).

24. The Defendants' written and/or *de facto* policy, practice and custom mandating wholesale strip searches of all misdemeanor, non-drug, non-weapon felonies and violation arrestees has been promulgated, effectuated and/or enforced in bad faith and contrary to clearly established law.

25. Reasonable suspicion to conduct a strip search may only emanate from the particular circumstances antecedent to the search, such as the nature of the crime charged, the particular characteristics of the arrestees, and/or the circumstances of the arrest.

26. Upon information and belief, the aforementioned YCJDC and Policy Making Defendants have promulgated, implemented, enforced, and/or failed to rectify a written and/or *de facto* policy, practice or custom of strip searching all individuals placed into the custody of the YCJDC and placed into jail-type clothing without any requirement of reasonable suspicion, or indeed suspicion of any sort, as well as after professional contact visits. This written and/or *de facto* policy made the strip searching of pre-trial detainees routine; neither the nature of the offense charged, the characteristics of the arrestee, nor the circumstances of a particular arrest were relevant to the enforcement of the policy, practice and custom of routine strip searches.

27. Pursuant to this written and/or *de facto* policy, each member of the Class, including the named Plaintiffs, were the victims of a routine strip search upon their entry into their YCJDC. These searches were conducted without inquiry into or establishment of reasonable suspicion, and in fact were not supported by reasonable suspicion. Strip searches are conducted for individuals arrested for, among other innocuous offenses, Harassment and Trespassing.

28. As a direct and proximate result of the unlawful strip search conducted pursuant to this written and/or *de facto* policy, the victims of the unlawful strip searches – each member of the class, including the named Plaintiffs – have suffered or will suffer psychological pain, humiliation, suffering and mental anguish.

### Facts Applicable to the Plaintiffs CM and RC

29. CM and RCs experiences are representative of the class at large. On February 22, 2007, CM and RC were arrested on Sex Abuse 1 counts and lodged in the Yamhill County Juvenile Detention Center on February 22, 2007.

30. CM and RC were transported to the YCJDC. For five days, CM suffered five strip searches and RC eight strip searches after meetings with counselors and attorneys. They were moved into a shower area in the Yamhill County Juvenile Detention Center and ordered to disrobe. As a Corrections Officer watched, RC and CM removed all of their clothing, including underpants.

31. A Corrections Officer then instructed them to lift their testicles, turn around, bend at the waist, spread the lobes of his buttocks and squat while coughing, with the Corrections Officer conducting a visual inspection of their genitals and rectal cavity.

32. On each particular occasion, there was no reasonable suspicion to believe that they were concealing weapons or other contraband. Indeed, no inquiry was made of them that could have given rise to the requisite reasonable suspicion.

33. As a direct and proximate result of the unlawful strip search conducted pursuant to YCJDC policy, practice and custom, they have suffered and continue to suffer psychological pain, humiliation, suffering and mental anguish.

**Facts Applicable to the Plaintiff Hinmon**

34. Amy Hinmon's experiences are representative of the class at large.    On November 2, 2006, Hinmon was arrested on Failure to Appear on Minor in Possession, Contempt Hearing for Failing to Complete Evaluation and lodged in the Yamhill County Juvenile Detention Center on November 2, 2006.

35.  Hinmon was transported to the YCJDC.  For six days, Hinmon suffered four strip searches, including after meetings with attorneys. She was moved into a shower area in the Yamhill County Juvenile Detention Center and ordered to disrobe.    As a Corrections Officer watched, Hinmon removed all of her clothing, including underpants.

36.  A Corrections Officer then instructed her to turn around, bend at the waist, spread the lobes of her buttocks and squat while coughing, with the Corrections Officer conducting a visual inspection of her genitals and rectal cavity.  She was then provided with a jail uniform.

37. On each particular occasion, there was no reasonable suspicion to believe that she was concealing weapons or other contraband.  Indeed, no inquiry was made of her that could have given rise to the requisite reasonable suspicion.

38. As a direct and proximate result of the unlawful strip search conducted pursuant to YCJDC policy, practice and custom, she has suffered and continues to suffer psychological pain, humiliation, suffering and mental anguish.

**Facts Applicable to the Plaintiff Lewis**

39. Joseph Lewis' experiences are representative of the class at large.  On or about September 4, 2007, Lewis was arrested on charges of Encouraging Child Pornography and lodged in the Yamhill County Juvenile Detention Center on September 4, 2007.

40.  JL was transported to the YCJDC. He was moved into a shower area in the Yamhill County Juvenile Detention Center and ordered to disrobe.  As a Corrections Officer watched,  JL  removed all of his clothing, including underpants.

41. A Corrections Officer then instructed him to lift his testicles, turn around, bend at the waist, spread the lobes of his buttocks and squat while coughing, with the Corrections Officer conducting a visual inspection of his genitals and rectal cavity.

42. On each particular occasion, there was no reasonable suspicion to believe that he was concealing weapons or other contraband.  Indeed, no inquiry was made of him that could have given rise to the requisite reasonable suspicion.

43. As a direct and proximate result of the unlawful strip search conducted pursuant to YCJDC policy, practice and custom, he has suffered and continues to suffer psychological pain, humiliation, suffering and mental anguish.

**Facts Applicable to the Plaintiff Williams**

44. Nathanael Williams' experiences are representative of the class at large.  On or about June 15, 2006, Williams was arrested on charges of Robbery 3, Theft 3, Minor in Possession of Alcohol, Criminal Trespass, Harassment and lodged in the Yamhill County Juvenile Detention Center on June 15, 2006. He was also lodged and strip-

searched August 3, 2006 for Minor in Possession of Tobacco, Nighttime Curfew Violation and Criminal Trespass.

45.  Williams was transported to the YCJDC. He was moved into a shower area in the Yamhill County Juvenile Detention Center and ordered to disrobe.  As a Corrections Officer watched, Williams removed all of his clothing, including underpants.

46. A Corrections Officer then instructed him to lift his testicles, turn around, bend at the waist, spread the lobes of his buttocks and squat while coughing, with the Corrections Officer conducting a visual inspection of his genitals and rectal cavity.

47. On each particular occasion, there was no reasonable suspicion to believe that he was concealing weapons or other contraband.  Indeed, no inquiry was made of him that could have given rise to the requisite reasonable suspicion.

48. As a direct and proximate result of the unlawful strip search conducted pursuant to YCJDC policy, practice and custom, he has suffered and continues to suffer psychological pain, humiliation, suffering and mental anguish.

## CAUSES OF ACTION

## AS AND FOR A FIRST CAUSE OF ACTION AGAINST ALL DEFENDANTS

### Violation of Constitutional Rights Under Color of State Law

### -- Unreasonable Search and Failure to Implement Municipal Policies to Avoid Constitutional Deprivations Under of Color of State Law --

49. Plaintiffs incorporate by reference and realleges each and every allegation stated in paragraphs 1 through 48.

50. The Fourth Amendment of the United States Constitution protects citizens from unreasonable searches by law enforcement officers, and prohibits officers from conducting strip searches of individuals arrested for misdemeanors or violations absent some particularized suspicion that the individual in question has either contraband or weapons.

51. The actions of Defendants detailed above violated Plaintiff's rights under the United States Constitution.  Simply put, it was not objectively reasonable for YCJDC Officers to strip search Plaintiffs and class members based on their arrests for misdemeanor/violation/non-drug or non-weapon charges.  It was also not objectively reasonable for the Policy Making Defendants to order/direct  County Corrections Officers to conduct such searches.

52. These strip searches were conducted pursuant to the policy, custom or practice of the County and the County's Department.  As such, the County is directly liable for the damages of the named Plaintiffs and members of the Class.

53. Upon information and belief, the aforementioned Director and Division Manager are responsible for establishing the policies and procedures to be utilized in the

operation of their YCJDC, and are responsible for the implementation of the strip search policy questioned in this lawsuit.  As such, each named individual is individually responsible for the damages of the named Plaintiffs and members of the Class.

54. Named individuals knew that the strip search policy was illegal, and acted willfully, knowingly, and with specific intent to deprive Plaintiffs and members of the Class of their Constitutional rights.

55. This conduct on the part of all Defendants represents a violation of 42 U.S.C. § 1983, given that their actions were undertaken under color of state law.

56. As a direct and proximate result of the unconstitutional acts described above, Plaintiffs and members of the proposed class have been irreparably injured.

57. Defendant Tim Loewen is the director Yamhill County Juvenile Department and Chuck Vesper is the Division Manager overseeing the YCJDC, and, as such, are jointly policy makers with respect to the treatment of pre-trial and other detainees over which the YCJDC exercises custodial or other control. They are made Defendants in this action in both their individual and official capacities

58.    Collectively, Mr. Vesper and Mr. Loewen are referred to as the "Policy Making Defendants."

**AS AND FOR A SECOND CAUSE OF ACTION AGAINST ALL DEFENDANTS**

**-- Demand for Declaratory Judgment --**

59. Plaintiffs incorporate by reference and realleges each and every allegation stated in paragraphs 1 through 58.

60. The policy, custom and practice of the County Departments, the County and the Policy Making Defendants are clearly unconstitutional, in that these entities and individuals are directing/conducting the strip searches of all individuals placed into the YCJDC without any particularized suspicion that the individuals in question have either contraband or weapons.

61. Plaintiffs and members of the Class request that this Court issue a declaratory judgment, and that it declare the strip search policy of the County and the County Departments to be unconstitutional.


**AS AND FOR A THIRD CAUSE OF ACTION AGAINST ALL DEFENDANTS**

**-- Demand for Preliminary and Permanent Injunction --**

62. Plaintiffs incorporate by reference and realleges each and every allegation stated in paragraphs 1 through 61.

63. The policy, custom and practice of the County Departments, the County and the Policy Making Defendants are clearly unconstitutional, in that these entities and individuals are directing/conducting the strip searches of all individuals placed into their YCJDC without any particularized suspicion that the individuals in question have either contraband or weapons.

64. Upon information and belief, this policy is currently in place at the named YCJDC, with new and/or prospective members of the Class being subjected to the harms that have already been inflicted upon the named Plaintiffs.

65. The continuing pattern of strip searching individuals charged with minor crimes will cause irreparable harm to the new and/or prospective members of the Class, an adequate remedy for which does not exist at law.

66. Plaintiffs demand that the County, the County Departments, the Policy Making Defendants and County Corrections Officers immediately desist from strip searching individuals placed into the custody of their YCJDC absent any particularized suspicion that the individuals in question have either contraband or weapons, and seek both a preliminary and permanent injunction from this Court ordering as much.

## DEMAND FOR PUNITIVE DAMAGES

67.  The actions of the Individual Defendants detailed herein are outrageous, in that they continue to propagate an illegal strip search policy even though they know for a fact that their actions are unconstitutional.

68. It is clear that the Policy Making Defendants, the County and the County Departments and all other named defendant counties have no respect for the civil rights of individual citizens or for the rule of law.  Consequently, an award of punitive damages is necessary to punish the Policy Making Defendants, and to send a message to them that the requirements of the United States Constitution also apply to government officials in all named counties.

## DEMAND FOR TRIAL BY JURY

69. The Plaintiffs hereby demand trials by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs CM, et al. on behalf of themselves and on behalf of a class of others similarly situated, request that this Honorable Court grants them the following relief:

A.        An order certifying this action as a class action pursuant to Fed. R. Civ. P. 23.

B.        A judgment against all Defendants, jointly and severally on Plaintiffs' First Cause of Action detailed herein, awarding Compensatory Damages to each named Plaintiff and each member of the proposed class in an amount to be determined by a Jury and/or the Court on both an individual and a class wide basis.

C.      A judgment against each individual Defendant on Plaintiffs' First Cause of Action for $1,000,000.00 in punitive damages for each.

D.      A declaratory judgment against all Defendants declaring the aforementioned Counties and County Departments' policies, practices and customs of strip and visual cavity searching all detainees entering the respective County YCJDC detention center, regardless of the crime charged or suspicion of contraband, to be unconstitutional and improper.

E.      A preliminary and permanent injunction enjoining Defendants from continuing to strip and visual cavity search individuals charged with misdemeanors or minor crimes or non-drug, non-weapon offenses absent particularized, reasonable suspicion that the arrestee subjected to the search is concealing weapons or other contraband.

F.      A monetary award for attorney's fees and the costs of this action, pursuant to 42 U.S.C. § 1988 and Fed. R. Civ. P. 23

Respectfully submitted by:

S//S Leonard R. Berman

Dated:  July 30, 2009

_____
Leonard R. Berman, OSB # 96040
**ATTORNEY FOR PLAINTIFFS AND THE PROPOSED CLASS**