IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

```
JEFORY MASHBURN, On Behalf of )
Minor CM, JOSEPH CORNELISON, )
On Behalf of Minor RC,       )
NATHANAEL WILLIAMS,          )
AMY HINMON, JOSEPH LEWIS,    )
individually and on behalf of )    No.  CV-08-718-HU
a class of all others        )
similarly situated,          )
                             )    OPINION AND ORDER
       v.                    )
                             )
YAMHILL COUNTY,              )
TIM LOEWEN,                  )
both individually and in his )
official capacity as Director,)
CHUCK VESPER,                )
both individually and in his )
official capacity as Division )
Manager,                     )
                             )
            Defendants.      )
                             )
```

Leonard R. Berman
LAW OFFICE OF LEONARD R. BERMAN
4711 SW Huber St.
Suite E-3
Portland, Oregon 97219

    Attorney for Plaintiffs

1 - OPINION & ORDER

Steven A. Kraemer
HOFFMAN HART & WAGNER, LLP.
1000 SW Broadway
20th Floor
Portland, Oregon 97205

    Attorney for Defendants

HUBEL, Magistrate Judge:

    This is an action brought pursuant to 42 U.S.C. § 1983, challenging various strip search policies in place at the Yamhill County Juvenile Detention Center (YCJDC). The five named plaintiffs seek to represent a class of similarly situated individuals. Pursuant to a stipulated motion, defendants Yamhill County Juvenile Department Director Tim Loewen and Yamhill County Juvenile Department Division Manager Chuck Vesper were dismissed with prejudice on July 6, 2010, leaving Yamhill County as the sole remaining defendant.

    Plaintiffs seek to file a third amended complaint which will add three more named plaintiffs, reinstate the dismissed defendants and claims, modify the existing class definitions, and add several new classes. The County opposes the motion on the grounds of unfair prejudice and futility. For the reasons discussed below, the motion should be granted.

## BACKGROUND

    This case has a lengthy procedural history that is worth reviewing. Plaintiffs are or were minors who were strip searched upon entry into the YCJDC and after contact visits with non-YCJDC staff members. They initiated this action seeking damages for

2 - OPINION & ORDER

strip searches that were allegedly carried out pursuant to unconstitutional written or *de facto* strip search policies implemented by defendants and applicable to all youth in YCJDC's custody. Second Amended Complaint (doc. #102) ¶¶ 5, 22, 26.

The original complaint alleged the YCJDC's policy of strip searching juveniles upon entry into the YCJDC regardless of the nature of the crime charged and without reasonable suspicion constituted a constitutional violation. Complaint (doc. #1) ¶¶ 22, 26. On July 29, 2009, this court granted plaintiffs' motion to file an amended complaint, which amended the class definition to allege that strip searches were conducted not only upon entry into YCJDC, but also after contact visits with attorneys and other counselors and professionals. First Amended Complaint (doc. #50) ¶ 6.

On December 4, 2009, this court entered Findings and Recommendations regarding the parties' cross motions for summary judgment (doc. #60), finding the admission search policy constitutional, and the contact visit search policy unconstitutional because it lacked reasonable suspicion that a juvenile had obtained and concealed contraband after a contact visit. In response, YCJDC changed its contact visit search policy on December 17, 2009, to permit unclothed body searches following contact visits "only if reasonable suspicion exists to support the search." Vesper Decl. (#133) ¶ 5, Ex. 2.

On March 11, 2010, Judge Mosman issued an opinion and order (doc. #79) agreeing that the contact visit strip search policy was unconstitutional absent reasonable suspicion, but finding that the scope of the admission search policy was excessive in relation to

3 - OPINION & ORDER

the government's interest.[1] Judge Mosman agreed with this court's recommendation that individual defendants Loewen and Vesper be granted qualified immunity. Id. In response to Judge Mosman's ruling, defendants implemented a revised admission search policy on March 17, 2010, that required reasonable suspicion based upon current allegations or past criminal history, and which limited the number of steps in the procedure and the time that a youth is unclothed during a search. Paasch Decl. (doc. #132) ¶ 3, Ex. 3. Specifically, the steps in the original policy directing staff to inspect the scalp, ears, hands, feet, and mouth and nose while the youth is unclothed were removed and replaced with the direction that while the youth is unclothed, staff "makes an initial top to bottom observation," once while the youth is facing away from the staff member conducting the search, and once when the youth is facing the staff member. Id.

On June 3, 2010, this court granted plaintiffs' motion for leave to file a second amended complaint, which was intended to reflect Judge Mosman's ruling regarding the unconstitutionality of the two policies. See Berman Decl. (doc. #91), ¶¶ 1-3. That same day, plaintiffs filed their second amended complaint and a new motion to certify class (doc. ## 102, 103).

Around this same time, the parties were conferring regarding dismissing with prejudice defendants Loewen and Vesper and plaintiffs' claims for punitive damages and declaratory and

---

[1] Judge Mosman later issued an amended opinion and order (doc. #93) in order to reflect his order granting defendants' motion to certify the issue for appeal to the Ninth Circuit. On July 27, 2010, the Ninth Circuit declined to certify the order for immediate appeal.

4 - OPINION & ORDER

injunctive relief. See Edenhofer Decl. (doc. #135) ¶¶ 4-9, Exs. 8-13. On June 16, 2010, defendants filed a stipulated motion for dismissal (doc. #106). This court held a telephone status conference on June 21, 2010, at which time plaintiffs' counsel stated on the record that he agreed to the dismissal with prejudice of defendants Loewen and Vesper, as well as the claims for punitive damages and declaratory and injunctive relief. See Transcript of June 21, 2010 Telephone Conference (doc. #121), pp. 19-20. Judge Mosman granted the stipulated motion on July 6, 2010 (doc. #110). The parties proceeded to fully brief the motion to certify the class and oral argument was set on the motion for October 25, 2010.

At some point, plaintiffs' counsel became concerned that strip searches were being conducted after court visits and after visits with counselors and attorneys, despite the changes to the written policies. Edenhofer Decl. ¶¶ 11-12; Transcript of October 12, 2010 Telephone Conference (doc. #122), pp. 4-7. In September and October the parties' counsel began communicating about these concerns. Edenhofer Decl. ¶¶ 11-16. Plaintiffs' counsel asserted that he had learned of at least one minor who claimed that he was unclothed while his scalp, ears, hands, feet, mouth, and nose were searched during his admission to the YCJDC, in violation of the court's order. Id. Plaintiffs' counsel also indicated his intent to amend his complaint to include a class of juveniles who were strip searched after court visits. Id.

On September 17, 2010, the strip search procedure was changed to reflect that certain portions of the search were not to be conducted while the youth was unclothed. Specifically, the step directing staff to make an initial top to bottom observation of the

5 - OPINION & ORDER

youth while the youth is fully unclothed was changed reflect that the initial observation is conducted while the youth is wearing underwear. Paasch Decl. (#132), ¶¶ 3-4, Exs. 3, 4. The revised policy continued to allow for the search of a male youth's foreskin, but at the request of plaintiffs' counsel, defendants revised the policy again on October 7, 2010, deleting the step requiring the foreskin search. Id. ¶ 5, Ex. 5.

On October 12, 2010, the court held a telephone status conference to address plaintiffs' counsel's prospective new claims and plaintiffs. At that time, plaintiffs' counsel admitted that he was "negligent" in his reading of the revised policies effective March 17, 2010, and which formed the basis of the stipulated dismissal. Transcript (doc. #122), pp. 3-4. This court set deadlines directing plaintiffs' counsel to further confer with defendants' counsel regarding the proposed additional parties, claims, and classes, and set October 26, 2010, as the deadline to file a motion to amend, for injunctive relief, or for sanctions.

On October 20, 2010, the court struck oral argument on the motion to certify the class, which had been set for October 25, 2010, noting that the court will reschedule the class certification hearing on the briefs already filed if the motion to amend is denied, or order new briefing if the motion is granted, (doc. # 120).

On October 26, 2010, plaintiff filed the current motion for leave to file a third amended complaint (doc. #123), as well as a motion for sanctions, attorney fees, preliminary injunction, and temporary restraining order (doc #125). On December 16, 2010, Judge Mosman denied the motion for sanctions and injunctive relief

6 - OPINION & ORDER

on the record, with leave to amend the request for injunctive relief only (doc. ## 140, 141). He did not address the merits of the motion to amend. Presently before the court is plaintiffs' motion for leave to file a third amended complaint.

## STANDARD

Federal Rule of Civil Procedure 15(a) provides that leave to amend a complaint "shall be freely given when justice so requires." The court should apply the rule's "policy of favoring amendments with extreme liberality." DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 186 (9th Cir. 1987) (internal quotation omitted). In determining whether to grant a motion to amend, the court should consider bad faith, undue delay, prejudice to the opposing party, futility of amendment, and prior amendments to the complaint. Sisseton-Wahpeton Sioux Tribe v. United States, 90 F.3d 351, 355-56 (9th Cir.), cert. denied 519 U.S. 1011 (1996).

Delay, by itself, will not justify denying leave to amend. DCD Programs, 833 F.2d at 186. In assessing timeliness, the Ninth Circuit has instructed courts to inquire "whether the moving party knew or should have known the facts and theories raised by the amendment in the original pleading." AmerisourceBergen Corp. v. Dialysist West, Inc., 465 F.3d 946, 953 (9th Cir. 2006)(internal quotation omitted). The timing of the motion to amend following discovery and with a pending summary judgment motion, weighs heavily against allowing leave.

7 - OPINION & ORDER

Schlacter-Jones v. General Telephone, 936 F.2d 435, 443 (9th Cir. 1991).

While undue delay is not generally sufficient by itself to justify denying a motion to amend,"a need to reopen discovery and therefore delay the proceedings supports a district court's finding of prejudice from a delayed motion to amend the complaint." Lockheed Martin Corp. v. Network Solutions, Inc., 194 F.3d 980, 986 (9th Cir. 1999). Prejudice is likely if an amendment involves new theories of recovery or would require additional discovery. McKnight v. Kimberly Clark Corp., 149 F.3d 1125, 1130 (10th Cir. 1998).

Furthermore, "futility of amendment can, by itself, justify the denial of a motion for leave to amend." Bonin v. Calderon, 59 F.3d 815, 845 (9th Cir. 1995). A district court need not grant a motion to amend where the "movant presents no new facts but only new theories and provides no satisfactory explanation for his failure to fully develop his contentions originally." Id. (citing Allen v. City of Beverly Hills, 911 F.2d 367, 374 (9th Cir. 1990)).

## DISCUSSION

Plaintiffs seek to amend the complaint in several ways. With regard to the parties, the third amended complaint would add three new named plaintiffs (TT, WEB, Fuentes) and allegations related to the strip searches they allegedly endured. Plaintiffs also seek to add those defendants previously dismissed by stipulated motion, Juvenile Department Director Tim Loewen, and

8 - OPINION & ORDER

1  Division Manager Scott Paasch, who took over for previously named
2  defendant Chuck Vesper.  Regarding the existing claims, the
3  complaint would change the current class allegations to reflect
4  that the unconstitutional admission and contact search policies
5  are ongoing and did not cease after the policy changes were
6  implemented in response to Judge Mosman's March 2010 order.
7  Plaintiffs also seek to reinstate claims for punitive damages and
8  declaratory and injunctive relief, despite previously stipulating
9  to dismissing these claims with prejudice.  Finally, the
10 complaint seeks to add new allegations relating to four new
11 classes based upon the following strip search policies: (1)
12 unclothed strip searches conducted after court appearances,(2)
13 unclothed strip searches conducted after "items were allegedly
14 deemed missing and/or in a 'facility search'" (3) partially-
15 clothed pat down or "clothing exchange" searches conducted after
16 court appearances, and (4) partially-clothed pat down or
17 "clothing exchange" searches conducted after attorney visits
18 inside the facility.[2]

19     As an initial matter, defendants assert that plaintiffs'
20 motion should be considered a motion to supplement rather than a
21 motion to amend because they seek to add new theories of
22 liability based on allegedly illegal searches that occurred after
23 the second amended complaint.  Amended pleadings generally

---

[2] As discussed extensively on the record during the hearing on April 5, 2011, the proposed third amended complaint is not at all clear with regard to articulating the details of the proposed classes and their corresponding search policies.  In order to flesh out these issues, counsel are directed to engage in a meaningful meet and confer dialogue prior to the filing of the third amended complaint as discussed on the record.

9 - OPINION & ORDER

incorporate events that occurred prior to the operative pleading, while supplemental pleadings are limited to subsequent transactions, occurrences, or events related to the claim or defense presented in the operative pleading. See Pratt v. Rowland, 769 F. Supp. 1128, 1131 (N.D. Cal. 1991); FRCP 15(d).

Here, the current complaint was filed on June 3, 2010, and many of the claims in the proposed third amended complaint allegedly occurred before that date. While some of the proposed amendments include claims that allegedly occurred after the date of the operative complaint, because leave to supplement and leave to amend are governed by similar standards and considerations, the court will consider the same discretionary factors as those used for a motion to amend. See Keith v. Volpe, 858 F.2d 467, 466 (9th Cir. 1988). Defendants oppose the present motion on the grounds of prejudice and futility.

### A. Prejudice

Defendants assert that they are unfairly prejudiced by the late filing of the motion to amend because discovery has long been closed and the proposed additional allegations differ in scope and circumstance than those at issue in the current complaint, thereby necessitating further discovery.

I agree with defendants that this case has made significant progress and is well on its way toward resolution. However, I am not persuaded that the delay alone is sufficient to justify denying the motion to amend. Keeping in mind that the policy of freely granting leave to amend is "to be applied with extreme liberality," defendants must advance more than the blanket arguments that allowing amendment would require reopening

10 - OPINION & ORDER

discovery and that the addition of multiple sub-classes of plaintiffs might confuse the jury.  Morongo Band of Mission Indians v. Rose, 893 F.2d 1074, 1079 (9th Cir. 1990).

   Plaintiffs argue that allowing the current amendment would "streamline the class certification process," by including "any and all conceivable search classes," thereby allowing the court to resolve any and all unconstitutional searches at YCJDC at once.  I find this argument persuasive, especially since this case has already been halted several times in the interest of a comprehensive process.  The court has already changed the scope of the class certification motion once, and the most recent pretrial order has been stricken.  New trial dates are to be set after resolution of the current class certification motion, which has also been put on hold pending the outcome of the present motion.

   The purpose of this litigation is to resolve the constitutionality of the strip search policies in place at the YCJDC.  The proposed amended complaint continues to advance that goal by adding allegations regarding additional strip search practices and/or policies, at least some of which were adopted after earlier rulings in this case.  Plaintiffs seek to add those classes of juveniles who were subjected to these additional searches and three new named plaintiffs to represent those classes.  Presumably, this will necessitate some extension of discovery, as these new plaintiffs will need to be deposed and counsel indicates some additional document exchange will likely need to occur.  There also appear to be some issues that may trigger additional summary judgment motion(s).

As discussed at the hearing, denial of this motion might allow this case to be resolved more swiftly, but it would likely result in a second lawsuit raising the new class allegations proposed in the third amended complaint, and which would center around the same legal and factual issues and involve many of the same parties. Such a filing would necessarily refer to this case as a related matter. The parties seem to agree that one judge should preside over all issues raised, whether in one or two lawsuits. There is little, if anything to gain, by way of avoiding prejudice to the defendants with the proposed amendment.

If this case is any indication, a new lawsuit would likely also follow a somewhat beleaguered course, which would only serve to undermine the interest of all parties in having these issues efficiently and finally resolved. The County has an important interest in running their juvenile department on a day-to-day basis with the knowledge that their policies pass constitutional muster. Similarly, the named plaintiffs and the class they seek to represent have an interest in knowing that the policies at the YCJDC to which they are subjected are constitutional.

What is more problematic is that the proposed amended complaint also seeks to reinstate defendants and claims that were previously dismissed with prejudice pursuant to a stipulated motion. It appears that at the time of the stipulated dismissal in July 2010, plaintiffs' counsel was unaware of the allegations underlying the proposed amended complaint, namely that despite the changes to the written policies, youth were allegedly still being subjected to impermissible strip searches at admission and after contact visits. Presumably, it was not until September

12 - OPINION & ORDER

2010 that counsel became aware that these searches were allegedly still occurring, at which time he alerted defense counsel and filed this motion shortly thereafter, on October 26, 2010. It was around this same time plaintiffs' counsel also learned of the unclothed strip searches allegedly conducted after court appearances, the unclothed strip searches allegedly conducted after items went missing and/or in a facility search, and the partially-clothed pat down or "clothing exchange" searches allegedly conducted after court appearances and visits with attorneys inside the facility.

Given the amount of time that has passed and the judicial resources already expended on resolving these issues, some additional delay is preferred over prolonging the comprehensive resolution of the constitutionality of the YCJDC's search policies with a second lawsuit. Thus, in the interest of judicial efficiency and to facilitate final resolution, I conclude that defendants have not carried their burden of demonstrating prejudice sufficient to outweigh the liberal policy favoring amendment. Accordingly, plaintiffs are permitted to amend the complaint with regard to the classes and claims.

### B. Futility

Defendants also contend that plaintiffs' proposed amendment is futile because it contains allegations against Loewen, who has already been dismissed with prejudice by stipulated motion. I agree that plaintiffs' counsel's stipulation to the dismissal with prejudice is troubling. However, this stipulation cannot fairly be construed to prevent counsel from asserting that the individual defendants took some allegedly unconstitutional action

13 - OPINION & ORDER

after the dismissal order was entered giving rise to new claims. In its current form, the third amended complaint appears to allege the existence of at least one additional strip search policy promulgated by defendants after the entry of dismissal. Thus, defendant Loewen may be reinstated as a defendant for those actions he allegedly took after his dismissal from the action on July 6, 2010.  Similarly, Paasch may be named as a defendant for the actions he allegedly took regarding any allegedly unconstitutional policies, once he took over as Division Manager from previously dismissed defendant Vesper.  The materials currently before the court do not indicate what date he assumed these responsibilities.  Plaintiffs' counsel is to take note that any allegations made against Loewen may not include anything arising out of his role as a policymaker for the admission and post-contact visit search policies which formed the basis for the stipulated dismissal, or be based on any personal involvement in any actual searches conducted pursuant to those policies prior to the date of his dismissal.

    At oral argument, defendants advanced the argument that it would be futile to allow the individual defendants to be reinstated into the action because they will likely be granted qualified immunity with regard to these additional policies, just as they were for the admission and post-contact visit policies. While this may or may not turn out to be the case, at this juncture, it is not possible to predict this outcome with any kind of certainty.  It is possible that after discovery, plaintiffs may be able to demonstrate facts sufficient to justify denying Loewen and Paasch qualified immunity with regard to some

14 - OPINION & ORDER

or all of these new allegations. Thus, I find that a possible future grant of qualified immunity does not render the amendment futile. The record is better developed on the merits than through a motion to amend.

Finally, defendants assert that amendment would be futile because plaintiffs seek to add a claim for punitive damages, but the only remaining defendant is the County, and punitive damages are not available against a municipal entity. At oral argument, plaintiffs' counsel clarified that plaintiffs seek punitive damages only against the individual defendants if allowed to be added, not against the County. Therefore, an amendment alleging punitive damages in this manner would not be futile and plaintiffs are permitted to seek punitive damages against the individually named defendants.

Plaintiffs are allowed to amend one final time for the reasons stated. Further amendment should not be expected.

## CONCLUSION

For the reasons discussed above, plaintiffs' motion for leave to file an amended complaint (#123) is GRANTED.

DATED this 8th day of April, 2011.

/s/ Dennis J. Hubel

Dennis James Hubel
United States Magistrate Judge

15 - OPINION & ORDER