IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**JEFORY MASHBURN on behalf of C.M., JOSEPH CORNELISON on behalf of R.C., NATHANAEL WILLIAMS, AMY HINMON, JOSEPH LEWIS, LENORA BROWN on behalf of W.E.B., RICHARD TOMLINSON on behalf of T.T., and FERNANDO FUENTES, JR.,**

    Plaintiffs,

  v.

**YAMHILL COUNTY and SCOTT PAASCH, individually and in his official capacity as Division Manager,**

    Defendants.

No. 3:08-cv-00718-MO

OPINION AND ORDER

**MOSMAN, J.**,

In this 42 U.S.C. § 1983 action, Plaintiffs settled their claims against Defendants Yamhill County and Scott Paasch for a total of $110,500. Now, Plaintiffs move [241] under 42 U.S.C. § 1988 for an award of attorney fees totaling $152,100. Defendants filed an opposition [247], and Plaintiffs replied [254].[1] For the reasons set forth below, I find that Plaintiffs are entitled to a fees award in the amount of $124,254.

---

[1] Mr. Berman also moves for an award of costs of $548. (Mot. [241] at 1.) This request is unavailing because the sixty-day order of dismissal [234] provides that dismissal is without costs.

1 – OPINION AND ORDER

## BACKGROUND

Plaintiffs filed their original complaint [1] in this action on June 12, 2008, alleging that Yamhill County's policies governing strip searches of juveniles at Yamhill County Juvenile Detention Center ("YCJDC") were unconstitutional. Three amended complaints [50, 102, 151] followed.

On March 11, 2010, on cross motions for summary judgment, I held the strip search policies unconstitutional in two respects. (Op. & Order [79] at 11–12, 20.) Specifically, I struck down the portions of the policies requiring strip searches after contact visits and providing for searches of the "scalp, ears, hands, feet, mouth, and nose" while the juvenile is totally nude. *Id.* Plaintiffs' counsel, Leonard Berman, filed a motion for sanctions [125] against Defendants for assertedly failing to revise the policies in light of these conclusions. (Mem. in Supp. [127] at 13–14.) I ultimately denied [140] the motion.

Almost throughout the pendency of this litigation, Plaintiffs pursued a motion to certify a class comprising all juveniles subject to a strip search under YCJDC's policies. (*See, e.g.*, Mem. in Supp. [51] at 1.) I ultimately denied the motion, in part because I found no question of fact or law common to all members of the putative class. (Tr. [223] at 4:23–6:5.)

Defendants extended an offer of judgment under Rule 68 of the Federal Rules of Civil Procedure on July 23, 2013. (Mr. Roberson's Decl. Ex. A [249].) Six Plaintiffs accepted the offer, but Jefory Mashburn on behalf of C.M. and Joseph Lewis opted instead to proceed to trial. *See id.* at 2–3. Two weeks before trial was set to begin, however, the parties reached agreement, and Mr. Mashburn and Mr. Lewis settled their claims for an amount $5500 greater than that in the offer of judgment. (Mr. Roberson's Decl. [248] at ¶ 4.)

## DISCUSSION

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). This formula applies to fees awards under § 1988. *See id.* & n.7. Courts consider several factors in calculating the number of hours and a reasonable hourly rate, including: "(1) the novelty and complexity of the issues, (2) the special skill and experience of counsel, (3) the quality of representation, (4) the results obtained, and (5) the contingent nature of the fee agreement." *Morales v. City of San Rafael*, 96 F.3d 359, 364 n.9 (9th Cir. 1996) (internal citations, quotation, and alteration omitted). Upon obtaining this "lodestar" figure, courts then determine whether it should be adjusted in light of

> (1) the time and labor required, . . . ([2]) the preclusion of other employment by the attorney due to acceptance of the case, ([3]) the customary fee, . . . ([4]) time limitations imposed by the client or the circumstances, . . . ([5]) the 'undesirability' of the case, ([6]) the nature and length of the professional relationship with the client, and ([7]) awards in similar cases.

*Morales*, 96 F.3d at 364 n.8 (quoting *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975)).[2]

### I. Hourly Rate

In measuring the reasonableness of an attorney's claimed hourly rate, the District of Oregon "uses the Oregon State Bar Economic Survey [("Survey")] as 'an initial benchmark.'" *Roberts v. Interstate Distrib. Co.*, 242 F. Supp. 2d 850, 857 (D. Or. 2002). The court's "starting point" is the average rate that the Survey reports for the relevant time and region. *Davis v. Wal-Mart Stores, Inc.*, No. 09-1488, 2012 WL 1424105, at *1 (D. Or. Apr. 23, 2012). The average rate reported in the Survey will then be adjusted for inflation between the date of the survey and the date the services billed were performed. *Silvia v. Multnomah County*, No. 07-1677, 2009

---

[2] The remaining *Kerr* factors are subsumed in the lodestar inquiry. *Morales*, 96 F.3d at 364 & n.9.

3 – OPINION AND ORDER

WL 1162085, at *2 (D. Or. Apr. 29, 2009). Counsel may deviate from the rates reflected in the Survey, but is "encouraged to provide ample justification" for doing so. *Roberts*, 242 F. Supp. 2d at 857.

Because Mr. Berman billed Plaintiffs for work performed in 2007 through 2013, an hourly rate must be determined for each of these seven years. According to the Survey, the hourly rate for an average personal injury litigator in Portland was $259 per hour in 2007 and $280 per hour in 2012. Oregon State Bar, 2007 Economic Survey 34 (2007), *available at* http://www.osbar.org/_docs/resources/07EconSurvey.pdf.; Oregon State Bar, 2012 Economic Survey 32 (2012), *available at* http://www.osbar.org/_docs/resources/Econsurveys/ 12EconomicSurvey.pdf. Adjusting for inflation in the intervening years yields rates of $268 per hour in 2008,[3] $268 in 2009,[4] $271 in 2010,[5] $279 in 2011,[6] and $286 in 2013.[7] These numbers will serve as an "initial benchmark" in my analysis.

Plaintiffs assert that they are entitled to recover fees at a rate of $325 per hour for all the time Mr. Berman billed in litigating their claims. (Mem. in Supp. [242] at 5.) Mr. Berman asserts that his was his "ordinary hourly rate" in 2013. (Mr. Berman's Decl. [243] at ¶ IV.) Plaintiffs raise a number of arguments in support of this substantial departure from the Survey.

---

[3] Applying a rate of inflation of 3.3 percent to the 2007 average returns a rate of $268. *See* Bureau of Labor and Statistics, Annual Average Indexes 2008, at 31 (2008), *available at* http://www.bls.gov/cpi/cpid08av.pdf (reporting a rate of inflation of 3.3 percent for Portland and Salem consumers between 2007 and 2008).

[4] Applying a rate of inflation of 0.1 percent to the 2008 rate returns a rate of $268. *See* Bureau of Labor and Statistics, Annual Average Indexes, 2009, at 31 (2009), *available at* http://www.bls.gov/cpi/cpid09av.pdf (reporting a rate of inflation of 0.1 percent for Portland and Salem consumers between 2008 and 2009).

[5] Applying a rate of inflation of 1.3 percent to the 2009 rate returns a rate of $271. *See* Bureau of Labor and Statistics, Annual Average Indexes 2010, at 31 (2010), *available at* http://www.bls.gov/cpi/cpid10av.pdf (reporting a rate of inflation of 1.3 percent for Portland and Salem consumers between 2009 and 2010).

[6] Applying a rate of inflation of 2.9 percent to the 2010 rate returns a rate of $279. *See* Bureau of Labor and Statistics, Annual Average Indexes 2011, at 31 (2011), *available at* http://www.bls.gov/cpi/cpid11av.pdf (reporting a rate of inflation of 2.9 percent for Portland and Salem consumers between 2010 and 2011).

[7] Applying a rate of inflation of 2.1 percent to the average reported in the 2012 Survey returns a rate of $286. *See* Bureau of Labor and Statistics, Semiannual Averages, First Half 2013, at 1 (2013), *available at* http://www.bls.gov/ cpi/cpidfv13.pdf (reporting rates of inflation for Portland and Salem consumers of 1.2 percent in the first half of 2012 and 0.9 percent in the second half)..

They argue that this case presented novel and difficult issues because the constitutionality of juvenile strip searches was "uncharted territory" in the Ninth Circuit. (Mem. in Supp. [242] at 5.) They also point out the attention this case received in the local press, and extol Mr. Berman's "tenacity and ingenuity." *Id.* at 5, 7. Finally, Mr. Berman observes that courts have awarded him fairly high hourly rates in previous cases. (Mr. Berman's Decl. [243] at ¶ IV.) Specifically, Magistrate Judge Papak found $250 per hour to be reasonable in 2009, and Judge Kalberer of the Yamhill County Circuit Court found $275 per hour to be reasonable in 2011. *Silvia*, 2009 WL 1162085, at *3; Mr. Berman's Decl. Ex. 2 [255-2] at 1.

Plaintiffs' arguments do not amount to "ample justification" for such a large departure from the Survey. First, Mr. Berman provides no reason to suppose that the rates he was awarded in prior cases are remarkable. In fact, Judge Papak's $250 figure in *Silvia* was based solely on the Survey, 2011 WL 1162085, at *3, and Judge Kalberer's $275 figure is less than the inflation-adjusted Survey rate that I calculated above. Second, Mr. Berman offers no explanation why his 2013 rate should apply to tasks performed from 2007 to 2012. Difficult as the issues in this case may have been, a fees award so grossly out of step with the Survey is not justified here.

## II.   Hours Expended

A party seeking an attorney fees award bears the burden of documenting counsel's hours adequately. *Hensley*, 461 U.S. at 433. The party must also show that counsel's hours were "reasonably expended," and should exclude hours that were "excessive, redundant, or otherwise unnecessary." *Id.* at 434 (internal quotation omitted).

Mr. Berman claims a total of 468 hours in this matter. (Mr. Berman's Decl. Ex. A [243-1] at 16.) He accounts for each individual billing entry in an itemized list. *Id.* Defendants agree that the listed entries add up to 468 hours. (Mr. Roberson's Decl. [248] at ¶ 10.) When I

calculated the sum of Mr. Berman's billing entries, however, I returned a total of 469.3 hours. I believe that typographical errors in Mr. Berman's list account for the discrepancy. For two entries, he included two decimal points in the number of hours: he entered "0..8" for one item and "..45" for another. (Mr. Berman's Decl. Ex. A [243-1] at 10, 12.) His spreadsheet software likely would not have recognized these entries as numbers in calculating the total, resulting in a sum that was short by 1.3 hours. I will therefore use 469.3 hours as the initial total. This breaks down to 6.0 hours in 2007, 40.7 hours in 2008, 96.0 hours in 2009, 113.6 hours in 2010, 70.0 hours in 2011, 66.7 hours in 2012, and 76.4 hours in 2013.[8]

Defendants seek a blanket reduction in Plaintiffs' fees award for two reasons: (1) Mr. Berman's billing entries are impermissibly vague; and (2) Defendants have not yet received an executed settlement agreement from Plaintiff Fernando Fuentes. Defendants also ask that six categories of billing items be excluded as unreasonable. Though I find that no wholesale reductions in Mr. Berman's total hours are warranted, as set forth below, I will exclude certain categories of items.

### A.    *Inadequate Descriptions of Tasks*

"[P]laintiff's counsel is not required to record in great detail how each minute of his time was expended," but "can meet his burden—although just barely—by simply listing his hours and identifying the general subject matter of his time expenditures." *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1121 (9th Cir. 2000) (internal quotation and alteration omitted). The District of Oregon has prevailed upon counsel to avoid such general descriptions as "'conference', 'telephone call with…', or 'correspondence to…'" without including the subject or purpose of

---

[8] The careful reader will note that these yearly figures add up to 469.4, not 469.3, hours. The discrepancy results from rounding each yearly total to the nearest tenth.

6 – OPINION AND ORDER

the event.  U.S. Dist. Ct., D. Or., Message from the Court Regarding Fee Petitions, http://www.ord.uscourts.gov/index.php/court-policies-517/fee-petitions (updated Feb. 6, 2013).

Defendants argue that the bulk of Mr. Berman's billing entries are too vague to permit the Court to ascertain the reasonableness of his requested fees.  (Opp'n [247] at 6.)  They provide two examples in support of this assertion.  First, they note a number of entries from April of 2010 that mention an "Urgent Reply."  (Mr. Roberson's Decl. Ex. B [249-1] at 30.)  Defendants argue that these entries do not make clear what tasks were performed.  (Opp'n [247] at 6.)  Second, Defendants observe that a number of entries from June 24, 2010, "only provide a date, name of a person and the case name" without any description of the subject matter of the task.  (*Id.*; Mr. Roberson's Decl. Ex. B [249-1] at 33.)  They argue that Mr. Berman's total hours should be reduced to reflect this vagueness.  (Opp'n [247] at 7.)

To the contrary, I find that Mr. Berman has adequately accounted for his time in this case.  Defendants' two examples do not indicate otherwise.  As Mr. Berman observes, the entries labeled "Urgent Reply" from are described as responses to Plaintiffs' requests for updates on the status of the case.  (Reply [254] at 5; *see* Mr. Roberson's Decl. Ex. B [649-1] at 30 (describing an email to "amy hinmon" as "Requested on Case Details 4-27-10 Exp. Re: Masburn- 2d Urgent Reply).)  Similarly, preceding items make clear that the June 24, 2010, entries refer to scheduling a Rule 16 conference.  (Reply [254] at 6; *see* (Mr. Roberson's Decl. Ex. B [249-1] at 33 (an email described only as "RE: Mashburn v. Yamhill County" closely follows emails labeled "Re: Mashburn v. Yamhill County R16").)  I also note that, if Mr. Berman's billing entries were infected so pervasively with vagueness that a blanket reduction in his hours was warranted, Defendants likely would not have been able to identify and call for exclusion of six individual categories of items.  I decline to reduce Mr. Berman's billed hours for vagueness.

7 – OPINION AND ORDER

B.   *Plaintiff Fuentes's Final Signed Settlement*

Defendants assert in their opposition memorandum that they have not yet received a signed settlement from Plaintiff Fernando Fuentes, Jr.  (Opp'n [247] at 10.)  They argue that the fees award should be reduced by one eighth until they receive that document.  *Id.*  Mr. Berman notes in reply that Mr. Fuentes executed a signed settlement agreement on February 3, 2014.  (Mr. Berman's Decl. Ex. 1 [255-1] at 1.)  Accordingly, the defect Defendants advance has been remedied and no reduction is warranted.

C.   *Time Spent Drafting the Complaint and Amendments*

Mr. Berman billed a total of 31.5 hours in preparing drafts of the original complaint and subsequent amendments.  (Mr. Roberson's Decl. [248] at ¶ 8; Ex. B [249-1] at 61–63.)  Defendants argue that this total is excessive for two reasons.  First, they observe that Mr. Berman based the complaint in this case at least in part on models he received from other litigators.  (Opp'n [247] at 7 (citing Mr. Berman's Decl. Ex. A [243-1] at 1.)  Second, they observe that Plaintiffs did not win recovery on all of the theories that Mr. Berman advanced.  *Id.*

I do not find Defendants' arguments persuasive.  Their bare observation that Mr. Berman relied on templates to prepare the complaint does not lead me to believe that he was spinning his wheels needlessly.  Their argument that Plaintiffs did not succeed on every avenue of recovery is redundant, because they assert this fact as an independent basis for reducing his award elsewhere in their opposition.  (Opp'n [247] at 8–9.)  I decline to reduce the number of hours Mr. Berman billed for drafting the complaint.

D.   *Clerical Tasks*

"Costs associated with clerical tasks are typically considered overhead expenses reflected in the hourly billing rate, and are not properly reimbursable."  *Strand v. Auto. Machinists*

*Pension Trust*, No. 06-1193, 2007 WL 2029068, at *5 (D. Or. July 11, 2007). Accordingly, courts do not award fees for "work which can often be accomplished by non-lawyers but which a lawyer may do because he has no other help available." *Missouri v. Jenkins by Agyei*, 491 U.S. 275, 288 n.10 (1989). A number of courts have found communications with opposing counsel and the court for scheduling purposes to be clerical tasks. *See, e.g.*, *Robinson v. Plourde*, 717 F. Supp. 2d 1092, 1099 (D. Haw. 2010) ("Tasks such as . . . communication with court staff, scheduling, and corresponding regarding deadlines[] are clerical and not compensable."); *Silvia*, 2009 WL 1162085, at *3 (rejecting as clerical Mr. Berman's "efforts to schedule discovery and various other matters related to the litigation").

Defendants assert that three categories of billing items are clerical. First, they observe that Mr. Berman included time spent uploading documents to CM/ECF in forty-five billing entries. (Mr. Roberson's Decl. [248] at ¶ 14.) Defendants note that the billing entries do not segregate the time spent uploading the files from the time spent drafting them. *Id.* Second, Mr. Berman billed a total of 0.5 hours for sending emails to defense counsel or a court reporter to ask for a copy of a document. *Id.* Third, Mr. Berman billed a number of hours for "scheduling." *Id.* Defendants do not attempt to estimate a total number of hours for the scheduling items, but request a blanket deduction of $5000 for all three clerical tasks. (Opp'n [247] at 8.)

Plaintiffs concede that uploading documents is a clerical task. (Reply [254] at 8.) They surmise that Mr. Berman spent 0.05 hours on each upload, and suggest a reduction of 22.5 hours. *Id.* They do not concede that Mr. Berman's efforts to schedule conferences and depositions were clerical, but argue that, if the Court deems them so, his time billed should be reduced by 6.8 hours. They do not respond to Defendants' assertion that 0.5 hours should be deducted for emails requesting copies of documents.

9 – OPINION AND ORDER

I find that all three of the tasks Defendants identify are clerical. Concerning document uploads, moreover, I disagree with the number of hours Plaintiffs propose. Mr. Berman asserted in a declaration that his "minimum billing increment is 0.1 hours." (Mr. Berman's Decl. [243] at ¶ V.) I will therefore deduct 0.1 hours for each entry in which Mr. Berman billed time for uploading a document. Because I find only forty-three such entries, I will deduct 4.3 hours in total. This amounts to 0.2 hours in 2008, 0.6 hours in 2009, 1.7 hours in 2010, 0.5 hours in 2011, 0.7 hours in 2012, and 0.6 hours in 2013.

I will also deduct time from Mr. Berman's hours for communications related to scheduling. I count a total of 8.5 hours, breaking down to 2.4 hours in 2009, 2.9 hours in 2010, 1.9 hours in 2011, 1.1 hours in 2012, and 0.3 hours in 2013. I will further deduct 0.5 hours for time spent requesting copies of documents, which breaks down to 0.1 hours in 2008, 0.3 hours in 2009, and 0.1 hours in 2010. (Mr. Roberson's Decl. [248] at ¶ 14.)

### E. *Unsuccessful Legal Theories*

A prevailing party is generally not entitled to an award for time spent pursuing ultimately unsuccessful claims. *Hensley*, 461 U.S. at 434–35. In determining whether an award should be reduced for limited success, courts in the Ninth Circuit first determine whether the unsuccessful claims are related to the successful claims. *Webb v. Sloan*, 330 F.3d 1158, 1168 (9th Cir. 2003). Claims are related if they "involve a common core of facts or are based on related legal theories." *Id.* (emphasis omitted). Recovery should not be reduced if the claims on which the prevailing party did not succeed are related to successful claims. *Id.* Second, courts determine whether the hours reasonably expended provide for satisfactory recovery in light of the overall results achieved. *Id.* If the party "obtained excellent results, his attorney should recover a fully compensatory fee." *Hensley*, 461 U.S. at 435.

### 1. Class Certification

Mr. Berman spent 46.6 hours on his ultimately unsuccessful motion to certify a class. (Mr. Roberson's Decl. [248] at ¶ 6.) Defendants would like this entire amount deducted from the total, calling it "an inordinate amount of time." (Opp'n [247] at 8.) Plaintiffs argue in reply that the class claims share a common core of fact with the claims on which Plaintiffs succeeded because all concerned allegedly unconstitutional juvenile strip searches. (Reply [254] at 12.)

To the contrary, I find that the claims of the putative class are not related to the claims on which Plaintiffs prevailed. I denied Mr. Berman's motion to certify a class of all juveniles subjected to a strip search at YCJDC in part because I found that revisions in Yamhill County's policies over the years and differences among the circumstances of individual searches precluded finding a common question of law or fact. (Tr. [223] 4:23–6:5.) This conclusion is incompatible with a finding that the claims of the putative class share a common core of fact or law with the claims that Plaintiffs carried through settlement.

Ultimately, however, no deduction is warranted because Mr. Berman achieved "excellent results." He not only obtained sizeable damages awards for Plaintiffs, but his efforts also led to at least two opinions holding Yamhill County's juvenile strip search policies unconstitutional in some respects. (*See* Op. & Order [79] at 11–12, 20; F&R [209] at 78; Op. & Order [218] (adopting [209] in part).) These efforts not only benefited plaintiffs, but likely secured protection for future juveniles admitted to YCJDC. I decline to deduct any time in connection with Mr. Berman's unsuccessful class certification efforts.

### 2. Motion for Sanctions

Defendants observe that Mr. Berman spent nineteen hours moving unsuccessfully to impose sanctions against Yamhill County's "revised policies." (Mr. Roberson's Decl. [249] at

11 – OPINION AND ORDER

¶ 7).  They provide no further context, nor an itemized list of the entries comprising the nineteen-hour figure.  Defendants would like all nineteen hours deducted from Plaintiffs' fees award.  *Id.*

I find that Plaintiffs' motion for sanctions is sufficiently related to their successful claims to justify awarding the fees incurred in litigating it.  On March 11, 2010, I held that Yamhill County's strip search policy was unconstitutional.  (Op. & Order [79] at 11–12, 20.)  Plaintiffs moved the Court to hold Defendants in contempt in October of 2010, asserting that their policy revisions in the intervening months did not address the constitutional violations I identified.  (*See* Mem. in Supp. [127] at 5–14.)  Specifically, Plaintiffs appear to have read my opinion to forbid YCJDC's practice of searching male juveniles' foreskins.  *See id.* at 13.  Defendants disputed this reading of the opinion.  (Opp'n [131] at 10–11.)  Nevertheless, after Plaintiffs moved for sanctions, Defendants revised YCJDC's policy to remove authorization for foreskin searches.  *Id.* at 11.  The motion for sanctions concerned the same allegedly unconstitutional conduct as underlay Plaintiffs' claims for relief.  Moreover, given that these efforts persuaded Defendants to remove foreskin searches from Yamhill County's strip search policy, they were not entirely unsuccessful.  I decline to deduct the time Mr. Berman spent in moving for sanctions.

### 3.    Voluntarily Dismissed Claims

Defendants observe that Mr. Berman spent 1.6 hours in voluntarily dismissing Darcey Tuttoro's claims on behalf of minor J.T.  (Opp'n [247] at 9 (citing Mr. Roberson's Decl. [248] at ¶ 12).)  Asserting that J.T.'s claims are not related to those of the current Plaintiffs because "each plaintiff experienced a different search on different dates," they argue that this time should be deducted from Plaintiffs' award.  *Id.*  In reply, Mr. Berman says only that 1.6 hours was not an excessive time to learn and achieve J.T.'s wish to dismiss his claims.  (Reply [254] at 14.)

For the same reason that the putative class claims do not share a common core of fact with Plaintiffs' successful claims, J.T.'s claims also are not related to Plaintiffs'. The 1.6 hours that Mr. Berman spent dismissing J.T.'s claims will be deducted from the ultimate fees award. Each of these hours was expended in 2009.

### E.  *Time Spent After Two Plaintiffs Rejected Defendants' Offer of Judgment*

Defendants issued a Rule 68 offer of judgment on July 23, 2013, in a total amount of $105,000 for all eight Plaintiffs' claims. (Mr. Roberson's Decl. Ex. A [249].) The offer restricted recoverable attorney fees to those incurred on or before the date of the offer. *Id.* at 2. Six Plaintiffs accepted, each on August 16, 2013. *Id.* at 3. Their awards totaled $88,000. *See id.* at 2. Plaintiffs Jefory Mashburn on behalf of C.M. and Joseph Lewis, however, failed to accept the offer, and with it settlement amounts of $11,500 and $5500, respectively. *Id.* at 2–3. Mr. Berman prepared to go to trial on these Plaintiffs' claims. (*See, e.g.*, Proposed Exhibit List [224]; Witness Statement [225].) Two weeks before the trial date, Mr. Mashburn and Mr. Lewis settled their claims for $15,000 and $7500, a $5500 total improvement over the offer of judgment. (Mr. Roberson's Decl. [248] at ¶ 4.) Mr. Berman billed 36.5 hours after the date of the offer. *Id.* at ¶ 5.

Defendants argue that Plaintiffs should not recover fees for time spent litigating Mr. Mashburn's and Mr. Lewis's claims after they failed to accept the offer of judgment. (Opp'n [247] at 9.) They assert that the offer of judgment's provision restricting recoverable fees applied to Mr. Mashburn's and Mr. Lewis's claims, and, alternatively, that the modest improvement over the terms of the offer does not justify the time spent.

Both of Defendants' arguments rest on mistaken premises. First, Mr. Mashburn and Mr. Lewis cannot be bound by the terms of an offer that they did not accept. Second, the amounts

Mr. Mashburn and Mr. Lewis recovered under the ultimate settlement represent a thirty-percent and a thirty-six-percent increase over the respective amounts in the offer of judgment. This is hardly "modest." I will not reduce Mr. Berman's hours for time spent after Defendants issued the offer of judgment.[9]

### G.   *Contact with the Media*

Efforts to obtain publicity for a case are "activities that attorneys generally do at their own expense." *Gates v. Gomez*, 60 F.3d 525, 535 (9th Cir. 1995). Here, Mr. Berman's billing items include a total of 1.6 hours in 2008 for media contact. (Mr. Roberson's Decl. Ex. B [249-1] at 66.) Defendants argue that these hours should be deducted from Mr. Berman's total. (Opp'n [247] at 10.) Mr. Berman concedes this deduction. (Reply [254] at 15.) I will deduct 1.6 hours for time spent communicating with the media.

### H.   *"Out of Office" Emails*

Mr. Berman listed billing entries totalling 0.7 hours in which he did no more than read emails indicating that the sender was out of the office. (Mr. Roberson's Decl. Ex. B [249-1] at 67.) Defendants request that I deduct these entries from Plaintiffs' fees award. (Opp'n [247] at 10.) Mr. Berman concedes this deduction as well. (Reply [254] at 15.) By year, the deduction amounts to 0.2 hours in 2010, 0.2 hours in 2011, 0.1 hours in 2012, and 0.25 hours in 2013.

In total, after the deductions recommended above, Mr. Berman incurred 6.0 hours in 2007, 38.8 hours in 2008, 91.1 hours in 2009, 108.7 hours in 2010, 67.4 hours in 2011, 64.8 hours in 2012, and 75.3 hours in 2013, for a total of 451.9 hours. Based on these totals and the

---

[9] Rule 68's terms also do not require that Plaintiffs' fees award be reduced. Subsection (d) of Rule 68 requires a party who rejects an offer of judgment to pay the other party's costs if he fails to win a judgment in excess of the amount of the offer. Fortunately for Mr. Mashburn and Mr. Lewis, "the term 'judgment' in Rule 68 includes the termination of litigation pursuant to settlement." *Lang v. Gates*, 36 F.3d 73, 75 (9th Cir. 1994). Because Mr. Mashburn and Mr. Lewis settled their claims for a greater amount than that offered in the judgment, Rule 68(d) does not prevent them from recovering attorney fees.

14 – OPINION AND ORDER

rates set forth above, Plaintiffs' presumptively reasonable lodestar figure is $124,524. This amount exceeds Plaintiffs' total recovery of $110,500. However, the results that Mr. Berman achieved for Plaintiffs justify a substantial award. Not only have Plaintiffs won compensation for the harm they suffered, but an unknowable number of future detainees at YCJDC have been spared from Yamhill County's formerly unconstitutional policies.

## CONCLUSION

Plaintiffs' Motion [241] for Attorney Fees is GRANTED IN PART and DENIED IN PART. Defendants are ordered to pay attorney fees in the amount of $124,524.

IT IS SO ORDERED.

DATED this  8th  day of April, 2014.

/s/Michael W. Mosman
MICHAEL W. MOSMAN
United States District Judge

15 – OPINION AND ORDER